## Wilson *et al. versus* Shoenberger's Executors.

A mortgagee in possession under an unrecorded mortgage, has no right to retain the possession until he is repaid the mortgage-debt, as against a purchaser at sheriff's sale under a judgment against the mortgagor.

In ejectment by the executors of a purchaser at sheriff's sale, against a mortgagee in possession under an unrecorded mortgage, the latter acquires no equities against the plaintiffs, from the fact, that the mortgagor is entitled, under the will of the plaintiffs' testator, to a share of his residuary estate; for this would involve a settlement of the whole estate of the testator.

A devise of a testator's residuary estate to his executors to be sold, and the proceeds of one-seventh thereof to be held by the executors in trust for the children of one of his sons, E. F. S., and the interest of that seventh to be paid to him for life, " in such way and manner," however, " as not to be liable to any of the debts of said E. F. S.," vests in E. F. S. only a qualified personalty, but no estate or interest in any particular portion of the lands devised. Such interest does not spring from any specific lands, but from the whole residuary mass of the testator's estate.

ERROR to the Common Pleas of *Huntingdon county.*

This was an ejectment by John G. Miles and Michael Berry, executors of Dr. Peter Shoenberger, deceased, against Andrew P. Wilson and Bernard Lorenz, for two tracts of land in West township, containing respectively 219 acres, and 153 acres 40 perches.

Both parties claimed title under Edwin F. Shoenberger, who, on the 14th May 1849, conveyed these tracts, together with the premises which were the subject of controversy between the same parties in the case reported in 7 *Casey* 295, to Andrew P. Wilson, one of the defendants, subject to a continuing encumbrance of $10,000, the interest whereof was to be paid annually to the persons therein mentioned. This deed purported to be made in consideration of $50,000; and was recorded on the 12th February 1850.

Andrew P. Wilson, on the same day on which this deed was made, executed his six bonds in favour of Edwin F. Shoenberger, in the penal sum of $10,000 each, conditioned "that if the above bounden Andrew P. Wilson shall well and truly pay to E. F. Shoenberger (out of said Juniata Forge Property), his executors, &c., or assigns, the just and full sum of $5000, &c., out of the said Juniata Forge Property (which said Forge Property, with the lands and premises appurtenant thereto, sold and conveyed by the said E. F. Shoenberger to the said A. P. Wilson, by deed dated this day, is to be alone liable and subject to judgment, levy, or sale, for the said sum of money or payment thereof, and no other lands or property of the said Andrew P. Wilson, real, personal, or of any kind whatsoever, to be in any way liable or subject for the same, &c.), then the above obligation to be void, or else remain in full force and virtue."

Two of these bonds were made payable on the 14th May 1850; two, on the 14th May 1851; and the other two, on the 14th May

1852. They were subsequently assigned by Edwin F. Shoenberger to the Lancaster Bank, as collateral security for six promissory notes of $5000 each, discounted for him by the bank, and maturing at the same date with the bonds.

Simultaneously with the execution of the deed and of these bonds, an agreement was entered into between Edwin F. Shoenberger and Andrew P. Wilson, which will be found in 7 *Casey* 296, and which the court there held amounted to a defeasance, and converted the conveyance into a mortgage. This agreement was not recorded.

On the 2d February 1850, a judgment was obtained by Dr. Peter Shoenberger against Edwin F. Shoenberger, for $13,306.58, under which the premises were seized in execution, and sold by the sheriff to Dr. Peter Shoenberger. The sheriff's deed to him was acknowledged on the 22d April 1852.

Dr. Peter Shoenberger, by his last will, dated the 14th June 1852, directed his residuary estate, including the premises in question, to be sold by his executors, and the proceeds to be held, appropriated, and distributed, as indicated in the following clauses of his will:—

"And as to the remaining part of my real estate not hereinbefore specifically devised, I devise the same to my executors, to be sold either at public or at private sale, whenever they shall consider it most to the interest of my estate to sell the same; and my wish is, that such of my real estate as is likely to increase in value by holding the same for a while, may not be too hastily sold, but that the same may be rendered as productive as practicable by such expenditures upon the same as my hereinafter named executors in their discretion shall think judicious, until my said real estate shall be sold as herein and hereby directed; my executors or administrators *de bonis non* with the will annexed, shall let out the same for such terms and under such leases as will be most likely to increase the value of the property so demised, and prevent it from going into a state of dilapidation."

"And my will is, that the rents, issues, and profits, and the proceeds of the sales of my real and personal estate not specifically devised or bequeathed, shall (after the payment of my debts, funeral expenses, and the expenses of the administration of my estate under the trusts and powers given to my executors in relation to my real estate not specifically devised, as well as my personal estate not specifically bequeathed, and the expenses incident to the administration of my general estate, whether real or personal, under the general powers vested by the law in my executors or administrators *de bonis non* with the will annexed), the aggregate amount shall constitute the 'residue' of my estate and be divided into seven equal shares, one share whereof shall be held by my hereinafter named executors and the survivors or survivor of them,

and by my administrators *de bonis non* with the will annexed, in trust for the use and benefit of my hereinbefore named son, Edwin F. Shoenberger, the interest whereof only to be paid to him regularly and annually for and during his natural life; and to be held under the said trusts in such way and manner as not to be liable to any of the debts of the said Edwin F. Shoenberger; and upon the death of the said Edwin F. Shoenberger, I give and bequeath the principal sum of the one seventh share of my 'residuary' estate to the surviving children of the said Edwin F. Shoenberger and the lawful issue of such as shall be then dead leaving lawful issue, in equal shares of the principal of the said share; the issue of such of his children as shall be then dead leaving lawful issue, to take such share as tenants in common in equal parts, such share only as would have been taken by his, her, or their parent in case said parent had been living at the death of my son Edwin F. Shoenberger."

The other six-sevenths were to be distributed in equal shares to certain other residuary legatees named, and by a subsequent codicil the testator revoked his will as to one of the shares and directed that the residue of his estate should be divided into six equal shares, the annual *interest* of one of which he directed to be paid to Edwin during life—and the *principal* to his children after his death under trusts precisely as hereinbefore stated, merely substituting sixths for sevenths in the distribution.

On the trial of the present cause, the defendants offered to prove the value of the mortgaged premises and of the improvements made upon them by the mortgagee prior to the sheriff's sale, for the purpose of enabling the jury to settle an account between the parties. The court below ruled out this evidence, and the defendants excepted.

The defendants' counsel then presented certain points in writing, upon which they requested the court to charge the jury, the substance of which was, that the jury should find a conditional verdict, stating an account between the parties as to the moneys advanced by the Lancaster Bank; such sum to be paid by the plaintiffs to the defendants before obtaining possession of the land. And that, under the will of Dr. Shoenberger, Edwin F. Shoenberger was a residuary devisee or legatee, and the plaintiffs suing for his benefit, could only recover, on accounting for such proportion of the money received from the bank, as he was entitled to as such residuary legatee.

The court answered the defendants' points in the negative, and sealed a bill of exceptions. And a verdict and judgment having been given for the plaintiffs, the defendants removed the cause to this court and here assigned for error: 1. The rejection of the evidence offered by the defendants. 2. The charge of the court below in answer to the points presented.

[Wilson *et al. v.* Shoenberger's Executors.]

*Smith, Champneys,* and *Petriken,* for the plaintiffs in error.

*Miles* and *Dorris,* for the defendants in error.

The opinion of the court was delivered by

WOODWARD, J.—When this case was here last year, the deed of E. F. Shoenberger to General Wilson of 14th May 1849, was adjudged a mortgage: 7 *Casey* 295.

The case is here now as an action of ejectment against a mortgagee in possession. It is likened to a bill in equity to redeem, and it is insisted that a chancellor would not allow the mortgagor to redeem until he had accounted with his mortgagee and repaid his advances.

The answer is, that the plaintiff is not the mortgagor, but a purchaser at sheriff's sale made on a judgment whose lien attached to the premises prior to that of the mortgage. Dr. Peter Shoenberger, whose executors are plaintiffs, purchased under a judgment entered on the 2d or 7th of February 1850. Both dates are given in the appendix to the paper-books, but it is not material which is right nor which wrong, for both are prior to the recording of the mortgage. Indeed, the mortgage has never been recorded at all. The part of it which conveyed the estate to Wilson was put on record the 12th February 1850, more than six months after its date, and five days at least subsequent to Dr. Shoenberger's judgment under which he purchased; but the accompanying defeasance which Wilson gave to E. F. Shoenberger not having been recorded, it is the case of an unrecorded mortgage: 17 *S. & R.* 70.

The proposition of the defendant is, therefore, that he, as the holder of an unrecorded mortgage which never became a lien upon the premises, has a right to retain them as against the purchaser at sheriff's sale, until he is repaid the mortgage-debt.

To sustain such a proposition would be to repeal our recording acts and to nullify the effect of judgment liens. Be it so, that equity would not turn out a mortgagee and admit a mortgagor until the mortgage-debt was paid, these plaintiffs are not here as mortgagors, but as purchasers under a lien paramount the mortgage. They acquired all the rights both of mortgagor and mortgagee in the land, and to insist that they shall account, is to insist that they shall account with themselves. On them the mortgagee has no claims in law or equity.

But against Edwin F. Shoenberger he would have equities, and it is said that the executors in this suit represent him as one of the devisees under his father's will. It would seem from the will of Dr. Shoenberger, that this land fell into the residuary part of his estate, the whole of which was devised to his executors, to be sold, the proceeds of one-seventh thereof to be held by the

executors in trust for the children of E. F. Shoenberger, and the interest of that seventh to be paid to him for life, " in such way and manner," however, " as not to be liable to any of the debts of said Edwin F. Shoenberger."

This gave the estate in the land to the executors, and vested only a qualified personalty in E. F. Shoenberger: Selfridge's Appeal, 9 *W. & S.* 56. And his interest, such as it was, sprung, not from this land specifically, but from the whole residuary mass, which included, together with this land, much other valuable estate.

Under the circumstances of the case, he cannot be regarded as a substantial party to this suit; and if he could, the equities which the defendant proposes to adjust would involve a settlement of the whole estate of Dr. Shoenberger, which would be a sufficient reason for disallowing them when presented in this form.

We see no ground in the bills of exception to evidence, or in the charge of the court, for reversing the judgment, and it is accordingly affirmed.